1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASEY D. GISH, Esq.
Nevada Bar No. 6657
THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, NV 89118
Phone: (702) 583-5883
Email: info@gishlawfirm.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

AMY VILELA, an individual;
JOZETTE FIGUEREDO, an individual;
AMY VILELA, as Special Administrator of the
Estate of SHALYNNE RAMOS,

              Plaintiffs,

    vs.

VALLEY HEALTH SYSTEM, LLC, d/b/a
CENTENNIAL HILLS HOSPITAL
MEDICAL CENTER, a Nevada Limited
Liability Company;
UNIVERSAL HEALTH SERVICES OF
DELAWARE, INC., a Delaware corporation;
Tanya Netz PAC; Jill Mcatee, RN; DOE
Defendants I through X, inclusive; ROE
NURSES I through XX, inclusive; ZOE
HOSPITALS or OTHER MEDICAL
FACILITIES I through X; and ROE
CORPORATIONS I through X, inclusive.

              Defendants.

Case No.:

**COMPLAINT**

1. **EMTALA VIOLATION FOR FAILURE TO SCREEN AND/OR TREAT SHALYNNE RAMOS**
2. **WRONGFUL DEATH OF SHALYNNE RAMOS**
3. **PROFESSIONAL NEGLIGENCE/MALPRACTICE AS AGAINST ALL DEFENDANTS**
4. **NEGLIGENCE AS AGAINST ALL DEFENDANTS**
5. **NEGLIGENT TRAINING/NEGLIGENT SUPERVISION AS AGAINST EACH DEFENDANT**
6. **RESPONDEAT SUPERIOR AGAINST AS AGAINST DEFENDANTS CENNTENIAL AND UHS**
7. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF JOZETTE FIGUEREDO**
8. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF AMY VILELA**

      COMES NOW, Plaintiffs AMY VILELA, an individual, JOZETTE FIGUEREDO, an individual, AMY VILELA (hereinafter "AMY", or "Plaintiff"), as Special Administrator of the Estate of SHALYNNE RAMOS by and through their attorney of record, Casey D. Gish of

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

1

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

The Law Office of Casey D. Gish and for causes of action against the above-named Defendants hereby complains and alleges as follows.

**COMMON FACTS**

1. SHALYNNE RAMOS (hereinafter "SHALYNNE") was a 22-year-old African-American female smoker who suffered from obesity as well as sickle cell trait, and who was also using the NuvaRing contraceptive device. (see affidavit of AMY VILELA attached hereto as <u>Exhibit 1</u>, and affidavit of Leland Nelson attached hereto as <u>Exhibit 2</u>)

2. In December 2014, SHALYNNE injured her knee in a fall. Due to chronic knee pain, she underwent magnetic resonance imaging ("MRI") in April 2015 which confirmed an ACL injury. (see <u>Exhibit 1</u>)

3. On May 23, 2015, SHALYNNE drove from Missouri to Las Vegas, Nevada, a trip which took approximately 22 hours. According to SHALYNNE's family, soon after her arrival on or about May 25, 2015 she began complaining of increasing pain in her lower left extremity distal to the knee. (see <u>Exhibits 1 and 2</u>)

4. On June 3, 2015 SHALYNNE was with her boyfriend Leland Nelson (hereinafter "Leland") who inadvertently reinjured her left knee after lifting her. This was the second time she suffered injury in this area. Leland, along with SHALYNNE's step-father, David Vilela ("David"), took her to Centennial Hills Centennial Hills Medical Center's Emergency Department (hereinafter "CENTENNIAL") at 6900 North Durango Dr., Las Vegas, Clark County, Nevada in order to uncover the source of the extreme pain she was experiencing in her left knee and lower left leg due to what was later determined to be a life-threatening Deep Vein Thrombosis ("DVT"). (see <u>Exhibit 2</u>)

2

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

5. Upon arrival at the CENTENNIAL Emergency Department, hospital staff immediately requested SHALYNNE's insurance information, which she was unable to provide, or to pay an upfront fee before she was triaged by nursing staff. (see Exhibit 2)

6. SHALYNNE and David, at the request of the CENTENNIAL's intake staff, attempted to contact her most recent insurer, as well as Tricare, in order to satisfy their demands for insurance information, or alternative, payment up front.  (see Exhibit 1)

7. After failing to provide proof of insurance, SHALYNNE was never examined by a physician, nor did she receive a proper emergency screening examination as required by 42 U.S.C. § 1395 dd(d)(2)(A), the Emergency Medical Transportation and Labor Act ("EMTALA").  (see Exhibit 2)

8. SHALYNNE specifically told CENTENNIAL that she had pain in her left knee and lower left leg, including the calf area.  The records reflect that that she was there for pain in her knee and calf area that she estimated to be an 8 on a scale of 10.  (see Exhibits 2 & 3)

9. The hospital did not ask Shalynne for a detailed medical history, what medications she was taking, if she was pregnant, or even her ethnicity.  The race listed in the CENTENNIAL medical records is "Hispanic", which is an incorrect assumption by hospital staff as it was not an answer provided to them by SHALYNNE.  (see Exhibits 2 & 3)

10. SHALYNNE had the sickle cell trait, a condition that exists among some African-Americans and is known to increase the risk of blood clots.  SHALYNNE also suffered from Polycystic Ovary Syndrome ("PCOS").  None of this information was documented in SHALYNNE's medical records by CENTENNIAL, and the hospital did not ask her to provide it. (see Exhibits 1, 2, & 3)

11. SHALYNNE was also using the contraceptive NuvaRing and was prescribed metformin to treat her PCOS.  NuvaRing is known for increasing the risk for blood

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

clots, especially when, as here, tobacco use and obesity are present.  None of these medications are documented in SHALYNNE's medical records by CENTENNIAL, and the hospital did not ask her to provide it. (see Exhibits 1, 2, & 3)

12. SHALYNNE had a prior surgery due to a broken arm when she was about 10 years old.  None of this information appears in the CENTENNIAL medical records, and the hospital did not ask her to provide it. (see Exhibits 1, 2, & 3)

13. Had the hospital actually inquired as to SHALYNNE's medical history and race they would have discovered several blood clot risk factors such as the fact that she was of African American descent, that she was a carrier of Sickle Cell Trait, that she smoked tobacco products, that she was currently using the birth control drug NuvaRing, that she was overweight, and that her symptoms began immediately following her twenty-two ("22") hour drive from Kansas City, Missouri to Las Vegas, Nevada on May 23rd – May 25th, 2015. (see Exhibits 1, 2, & 3)

14. When SHALYNNE requested actual emergency medical screening sufficient to discover the blood clot, the CENTENNIAL staff refused to perform any diagnostic testing other than the x-ray and told her that she could return for additional care and testing once she obtained insurance. (see Exhibits 1 & 2)

15. This denial of emergency medical screening is in clear violation of 42 U.S.C. § 1395 dd(d)(2)(A), the Emergency Medical Transportation and Labor Act ("EMTALA").

16. SHALYNNE was treated with an immobilizer and told to obtain insurance in order to secure outpatient orthopedic reevaluation.   SHALYNNE was never instructed by the hospital staff or physicians regarding the proper use and pressure for the mobilization device and she was never warned about the danger of blood clots or the danger of sitting for long periods of time such as in a car or an airplane, despite the fact that she had just come to Las Vegas from out of town.  (see Exhibits 1 & 2)

4

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

17. Distraught and discouraged, SHALYNNE felt humiliated and heeded the advice of the CENTENNIAL staff and attempted to obtain insurance coverage before seeking out any further medical treatment and suffering the same embarrassment as her June 3rd visit. (see Exhibit 1)

18. After discharge from the hospital, SHALYNNE continued to complain about the pain and swelling in her left knee and lower left leg, including the calf area.  Additionally, she became increasingly short of breath over this time period. (see Exhibits 1 and 2)

19. Approximately three ("3") weeks later, on June 25, 2015, SHALYNNE flew back to Missouri. Shortly thereafter, she developed chest pain and increased shortness of breath. (see Exhibit 1)

20. On June 26, 2015, she was rushed to Research Medical Center Hospital where she was diagnosed with an acute pulmonary embolism. (see Exhibits 1 & 3)

21. The doctors at Research Medical Center Hospital informed AMY and her sister Ellie Gonzalez, who is an Emergency Room Nurse employed by Research Medical Center, that SHALYNNE had a blood clot in her lower leg that was so massive that part of it had broken off and traveled to her lungs.  The doctors also informed her that due to the size of the remaining portion of the clot, despite the use of clot thinners and filters, it was obvious to them that the clot was likely present during the June 3, 2015 visit to Centennial Hills emergency department in Las Vegas.  The doctors also informed AMY and her sister that the clot probably began to form when SHALYNNE drove from Missouri to Las Vegas on May 23 to 25, 2015.  (see Exhibits 1 & 3)

22. SHALYNNE died in her mother's arms at Research Medical Center Hospital on June 28, 2015. (see Exhibits 1 & 3)

23. Centennial Hills Hospital, including Tanya Netz PAC; Jill Mcatee, RN and the nursing staff on June 3, 2015, fell below the standard of care and breached the applicable

5

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

standard of care when they failed to diagnose and treat SHALYNNE's blood clot that had formed in her leg when she was treated on June 3, 2015.  (see <u>Exhibit 3</u>)

24. SHALYNNE presented with severe and ominous symptoms that, given her severe risk factors for formation of blood clots, should have led a reasonable practitioner to specifically rule-in or rule-out the presence of a blood clot in Shalynee's leg. (see <u>Exhibit 3</u>)

25. Despite these severe risk factors for formation of blood clots that SHALYNNE presented, the physicians and nursing staff failed to conduct an adequate examination of her when she presented herself to Centennial.  An adequate examination would, to a high degree of medical probability, have identified the blood clot that had formed in SHALYNNE's lower left leg. (see <u>Exhibit 3</u>)

26. Such signs, symptoms, and risk factors would have led any reasonable practitioner, to order an ultrasound of SHALYNNE's leg to examine her for presence of a blood clot. To a high degree of medical probability, the ultrasound study would have been positive for a blood clot. (see <u>Exhibit 3</u>)

27. Consequently, but for Centennial Hills Hospital, including Tanya Netz PAC; Jill Mcatee, RN and the nursing staff, departing from the standard of care during their management of SHALYNNE on June 3, 2015, SHALYNNE would still be alive.  The aforementioned breaches of the standard of care resulted in the death of SHALYNNE RAMOS. (see <u>Exhibit 3</u>)

28. This instant action is brought under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, *et. seq.*, ("EMTALA") due to the denial of an emergency medical screening examination and under N.R.S. 41A.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

29. Pursuant to 42 U.S.C. § 1395 dd(d)(2)(A), this instant action seeks damages for the personal harm suffered by SHALYNNE RAMOS as a result of the lack of screening and medical treatment on June 3, 2015 which resulted in her death on June 28, 2015.

30. As such cause of action is based upon a federal cause of action, this instant action is brought outside of the statutory caps for malpractice under Nevada state law and NRS 41.035.

31. This action also seeks damages as a result of the emotional distress inflicted upon SHALYNNE RAMOS for the humiliation she suffered as a result of her treatment by the Defendants on June 3, 2015.

32. This action also seeks damages as a result of the wrongful death of SHALYNNE, including but not limited to her loss of earning capacity and loss of companionship, society, and comfort.

33. This action also seeks damages as a result of the emotional distress inflicted upon AMY VIELA for the mistreatment and death of her daughter, SHALYNNE.

34. This action also seeks damages as a result of the emotional distress inflicted upon JOZETTE FIGUEREDO for the mistreatment and death of her sister, SHALYNNE.

35. This action also seeks damages as a result of the negligence of the defendants.

36. This action also seeks damages as a result of the malpractice of the defendants.

## PARTIES

37. At all relevant times, SHALYNNE RAMOS ("SHALYNNE") was a United States citizen who was domiciled in Clark County, Nevada.

38. At all relevant times, AMY VILELA ("AMY") was and is a United States citizen who was domiciled in Clark County, Nevada.

39. At all relevant times, JOZETTE FIGUEREDO ("JOZETTE") was and is a United States citizen and a minor who was domiciled in Clark County, Nevada.

40. Upon information and belief, it is alleged that at all time relevant hereto, Defendant VALLY HEALTH SYSTEM, LLC d/b/a CENTENNIAL HILLS HOSPITAL MEDICAL CENTER ("CENTENNIAL") was and is a private hospital that is a wholly

owned subsidiary of Universal Health Services, Inc., and is domiciled within the State of Nevada and does business in Clark County, Nevada.

41. Upon information and belief, it is alleged that all time relevant hereto, Defendant UNIVERSAL HEALTH SERVICES OF DELAWARE, INC. ("UHS") is incorporated within the State of Delaware and does business in Clark County, Nevada.

42. That Plaintiffs have obtained the Affidavit of Marc Eckstein, M.D. in support of their claim for medical malpractice pursuant to NRS 41A.071. Dr. Eckstein's affidavit is attached hereto as Exhibit 3 and supports the allegations contained in this action. Dr. Eckstein's Curriculum Vitae, attached hereto as Exhibit 4, substantiates that he has practiced and has knowledge in areas that are substantially similar to the type of practice engaged in by Defendants herein at the time of the alleged malpractice.

43. At all times mentioned herein, Tanya Netz PAC (hereinafter "NETZ") was and still is, to the extent known by Plaintiffs, a nurse practitioner or physician's assistant working at the emergency department of CENTENNIAL on June 3, 2015 and a resident of Clark County, Nevada.

44. At all times mentioned herein, Jill Mcatee, RN (hereinafter "MCATEE") was and still is, to the extent known by Plaintiffs, a registered nurse working at the emergency department of CENTENNIAL on June 3, 2015 and a resident of Clark County, Nevada.

45. At all times mentioned herein, Defendants and all of them were and still are, to the extent known by Plaintiffs, upon information and belief, the employer of DOES I through X and ROE NURSES I through XX. At all times relevant herein, upon information and belief, Defendants and all of them, and DOES I through X, ROE NURSES I through XX, and ZOE HOSPITALS or OTHER MEDICAL FACILITIES I through X were acting in the course and scope of their employ/agency and/or joint

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

venture.

46. That the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants designated as DOES I through X, ROE NURSES I through XX, ZOE HOSPITALS or OTHER MEDICAL PROVIDERS/FACILITIES I through X, inclusive, are unknown to Plaintiffs. Therefore, Plaintiff sues said Defendants by said fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as DOE, ROE, and/or ZOE are responsible in whole or in part for the events and happenings referred to herein. Plaintiff is also informed and believes and allege that each of the Defendants both proximately and actually caused damages to the Plaintiffs through their negligent, reckless, and/or intentional conduct, omissions, and representations, as more fully set forth in the facts, circumstances and events described herein, including but not limited to the medical treatment provided to SHALYNNE RAMOS as well as any and all complications suffered as a result of any and all treatment rendered by any Defendant.

47. Such parties may include, but are not limited to: medical care providers, nurses, hospitals, doctors, surgeons, anaesthesiologists, medical professionals, clinics, radiologists, internists, Emergency Room Physicians, hospitalists, nurse practitioners, physicians' assistants, insurance companies, employees thereof and/or any other business, entity or person that interacted with or has contractual or statutory obligations to the Plaintiffs related to this action or the medical treatment addressed herein. Plaintiffs are informed that ROE NURSES I through XX were also proximately involved in whole or in part for the events and happenings referred to herein and proximately and actually caused damages to Plaintiffs through their negligent, reckless, and/or intentional conduct, omissions, and representations.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

Plaintiffs are informed that ROE NURSES I through XX are nurse practitioners, charge nurses, discharge nurses, nursing supervisors, nurses' assistants, attending nurses, operating room nurses, and/or other medical staff that were involved in the treatment of SHALYNNE RAMOS prior to, during, and/or following the events described in the instant Complaint. Additionally, Plaintiffs are informed that ZOE HOSPITALS or OTHER MEDICAL FACILITIES I through X were owners of medical facilities, operators of medical facilities, employers and/or agents of DOES I through X and/or ROE NURSES I through XX, and/or were entities which were charged with the training and supervision of any of the Defendants, whether DOE or ROE, herein described, and/or were culpable in the present case due to their provision of medical care, supplies and/or medical products which fell below the applicable standard of care. The Plaintiffs will seek leave of this Court to amend this Complaint to insert the true names and capacities of DOES I through X, ROE NURSES I through XX, ROE CORPORATIONS I through X, and/or ZOE HOSPITALS or OTHER MEDICAL FACILITIES I through X, inclusive, when the same have been ascertained and to thence join them in this action.

48. At all times relevant herein, Defendants, and each of them, were the agents, servants, partners, joint ventures, and employees of each and every other Defendant, and were acting within the course and scope of their agency, partnership and employment, and, to the extent permitted by law, are jointly and severally liable.

49. The acts performed by representatives of Defendants CENTENNIAL and UHS, whether such representatives have been individually named herein as a defendants, or are yet to be identified, were all ones which those representatives had the actual and/or apparent authority to perform, may have been within the scope of their employment, were of the kind they were authorized to perform, and were actuated at least in part by

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

a desire to serve their employers, and therefore the entity defendants are liable for their actus pursuant to the doctrine of respondent superior.

## JURISDICTION AND VENUE

50. All of the acts complained of herein, and a substantial part of the events giving rise to the claims alleged herein, occurred in Clark County, Nevada.

51. Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 1395 dd(d)(2)(A).

52. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331, as this instant action requires the interpretation and application of a federal statute.

53. Venue is properly conferred on this Court pursuant to 28 U.S.C. § 1391 (b) because the Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claims alleged herein took place in this District.

54. Where applicable, all matters set forth herein are incorporated by reference in the various causes of action which follow.

## GENERAL MEDICAL ALLEGATIONS

55. That as a result of the negligent, emergency treatment received, SHALYNNE suffered the injuries herein alleged and died.  As a further result of the negligent, emergency treatment SHALYNNE received, Plaintiffs herein suffered physical and emotional distress.  As set forth in the Affidavit of Dr. Eckstein, SHALYNNE'S death would not have occurred in the absence of negligence.

56. That each of the Defendants fell below the applicable standards of medical care in their treatment of SHALYNNE. This is including, but not limited to, failing to have a physician examine SHALYNNE, failing to warn SHALYNNE of the high risk of blood clots presented by sitting or traveling for long periods of time, failing to recognize SHALYNNE's high risk for blood clots due to her obesity, her race as an African American, her usage of the contraceptive NuvaRing, her medical history, and

her use of tobacco, amongst other factors, and failing to ensure SHALYNNE was treated in a timely and appropriate manner related to the blood clot that was in her leg and to treat in a timely and appropriate manner the pain she reported in her knee and below.

57.   That as a further direct and proximate result of the negligence, recklessness and carelessness of each of the Defendants, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable.   Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

58. That Plaintiffs and SHALYNNE, as a direct and proximate result of Defendants' conduct, sustained severe, permanent, and disabling injuries and damages resulting in SHALYNNE's death.

59. That in addition to the foregoing, Plaintiffs, have been caused to sustain severe and debilitating emotional injuries and damages subject to proof at the time of trial, all of which are in an amount to be determined by a jury at the time of the trial of this matter.

60. As a proximate result thereof, Plaintiffs have been caused to incur expenses as and for attorney's fees and costs of suit herein. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and the costs of suit herein.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

**FIRST CAUSE OF ACTION**

**(EMTALA VIOLATION FOR FAILURE TO SCREEN AND TREAT SHALYNNE AS AGAINST ALL DEFENDANTS)**

61. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

62. EMTALA, specifically 42 U.S.C. § 1395dd(a) states:

**(a) Medical screening requirement**
In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

63. EMTALA, specifically 42 U.S.C. § 1395dd(h) states:

**(h) No delay in examination or treatment**
A participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) of this section or further medical examination and treatment required under subsection (b) of this section in order to inquire about the individual's method of payment or insurance status.

64. EMTALA, specifically 42 U.S.C. § 1395dd(a) states:

**(b) Necessary stabilizing treatment for emergency medical conditions and labor**

(1) In general.
If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

65. EMTALA, specifically 42 U.S.C. § 1395dd(a) states:

**(e) Definitions.**

13

In this section:

(1) The term "emergency medical condition" means—

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part;

(2) The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

(3)(A) The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, . .

66. Defendant CENTENNIAL is a hospital which has an emergency department that is covered under EMTALA.

67. Upon information and belief, Defendant CENTENNIAL has entered into a provider agreement under 42 U.S.C. § 1395cc.

68. As a result of the provider agreement, Defendant CENTENNIAL is obligated to comply with the statutory requirements under EMTALA.

69. On June 3, 2015, SHALYNNE came to the emergency department at CENTENNIAL.

70. Upon her arrival, SHALYNNE was suffering from the symptoms of Deep Vein Thrombosis ("DVT"). (see Exhibits 1, 2, and 3)

71. SHALYNNE requested an examination and treatment for these symptoms from CENTENNIAL. (see Exhibits 1 and 2)

72. CENTENNIAL requested SHALYNNE's insurance information or up-front payment before providing any sort of triage or emergency screening examination. (see Exhibits 1 and 2)

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

73. SHALYNNE was never asked to provide her medical history and inaccurate information was inputted into her medical record without her input or assistance. (see Exhibits 1 and 2)

74. SHALYNNE stated that she was suffering from pain that she estimated to be at an intensity of 8 on a scale of 1 to 10. (see Exhibits 1, and 2)

75. SHALYNNE informed the staff at CENTENNIAL that she did not believe that this was a simple orthopaedic joint or bone injury and requested an MRI or further diagnostic testing which could have uncovered her underlying emergency medical condition. (see Exhibits 1, 2, and 3)

76. CENTENNIAL staff refused to comply with SHALYNNE's request for an MRI or more thorough screening and stated that without insurance that they could not assist her and that if she obtained insurance she could return for additional care. (see Exhibits 1 and 2)

77. Based on the statements by CENTENNIAL's staff, their decision to not perform a sufficient screening examination was based on SHALYNNE's lack of insurance.

78. This Court has held that "[p]rocedurally, a hospital must provide the same level of screening uniformly to all individuals who present substantially similar complaints – for example, uninsured persons must be given the same screening as insured persons." (see *Abney v. University Medical Center of Southern Nevada*, 2010 WL 1439106 citing *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1192.)

79. Such failure to provide SHALYNNE with a timely and appropriate medical screening for her DVT is a violation of 42 U.S.C. § 1395dd(a).

80. This failure to provide an appropriate medical screening, as well as the malpractice of CENTENNIAL in misdiagnosing SHALYNNE with a knee injury, and the further malpractice in providing her with a knee brace without any instructions for use, resulted in her life-threatening condition remaining undiscovered until her death.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

81. Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Plaintiffs demand judgment against CENTENNIAL, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to determined by a jury, and further demand judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

82. Plaintiffs have been required to retain The Law Firm of Casey D. Gish to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S. 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## SECOND CAUSE OF ACTION

## (WRONGFUL DEATH OF SHALYNNE RAMOS AS AGAINST ALL DEFENDANTS)

83. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

84. Plaintiffs are the heirs and the personal representative of SHALYNNE.

85. Defendants caused the death of SHALYNNE through their wrongful acts and neglect of SHALYNNE when she sought medical care at the CENTENNIAL emergency department as described herein.

86. Defendants' wrongful acts and neglect of SHALYNNE caused her to consciously experience extreme pain and suffering prior to her death.

87. Pursuant to N.R.S. 41.085, Defendants are liable for the wrongful death of SHALYNNE.

88. Defendants are liable for the lost earning capacity of SHALYNNE.

89. Defendant's wrongful acts and neglect of SHALYNNE caused her death and thus deprived Plaintiffs of SHALYNNE's future companionship, society, and comfort.

90. Wherefore, Plaintiff demands judgment against Defendants, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

this action, including attorney's fees, and such other relief deemed to be just and equitable.

91. SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable. Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

92. Plaintiffs have been required to retain The Law Firm of Casey D. Gish to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S. 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## THIRD CAUSE OF ACTION

### (PROFESSIONAL NEGLIGENCE/MALPRACTICE AS AGAINST ALL DEFENDANTS)

93. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

94. That each of the Defendants had a duty to provide for appropriate evaluation(s), medical treatment, testing and care, and the protection and safety of SHALYNNE while she was in their care, by insuring the safe and proper medical attention, treatment and care was provided to SHALYNNE at all times. That all Defendants had a duty to exercise reasonable care during their evaluation and administration of medical care, and to do so within the standard of care. All Defendants failed to adequately assess and treat SHALYNNE at the CENTENNIAL emergency department.

95. That a duty owed to SHALYNNE was breached by each of the Defendants, their

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

agents, staff and employees, and that each of the Defendants failed to follow proper medical protocols and procedures, which ultimately led to the injuries and damages as herein above alleged, thereby causing severe, permanent, and debilitating injuries and damages to SHALYNNE and ultimately causing her death. (Exhibit 3)

96.  That as a direct and proximate result of this breach in protocol, procedure, and as a direct  and proximate result of the breach of the applicable standards of care and treatment and the ethical standards in the practice of medicine, Plaintiffs have sustained damages in an amount to be determined by a jury at the time of the trial of this matter.

97.  That as a further direct and proximate result of the Defendants, and each of their negligence, malpractice, falling below the standard of care and/or the standard of practice, recklessness, intentional acts and/or conscious indifference and disregard for the safety and well-being of SHALYNNE, she was caused to suffer severe and extreme pain, suffering, and distress, as well as mental and emotional distress, ultimately culminating in her death all to the Plaintiffs' damages in an amount to be determined by a jury at the time of trial of this matter.  As a result, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable.  Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

98. As a proximate result, Plaintiffs have been caused to incur expenses as and for attorney's fees and costs of suit herein. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and the costs of suit herein.

99. Plaintiffs have been required to retain The Law Firm of Casey D. Gish to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S. 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## FOURTH CAUSE OF ACTION

### (NEGLIGENCE AS AGAINST ALL DEFENDANTS)

100.    Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

101. Defendants, and each of them, owed SHALYNNE a duty of care in her treatment and care.

102. Defendants, and each of them, breached that duty as set forth above when they completely and utterly failed to treat, assess, and care for SHALYNNE in a reasonable manner, and failed to take reasonable actions to diagnose the blood clot she was suffering from thus causing her extreme pain and suffering and ultimately causing her death.

103. That Defendants, and each of them breached the duty as set forth above by not providing adequate care and treatment at the CENTENNIAL emergency department.

104. That as a direct and proximate result of the negligence, recklessness and/or intentional conduct of each of the Defendants as alleged hereinabove, SHALYNNE suffered extreme pain and suffering and ultimately died.  As a result Plaintiffs have suffered damages in an amount to be determined by a jury at the trial of this matter. As a result, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable.

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

105. As a proximate result, Plaintiffs have been caused to incur expenses as and for attorney's fees and costs of suit herein. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and the costs of suit herein.

## FIFTH CAUSE OF ACTION

## (NEGLIGENT TRAINING/NEGLIGENT SUPERVISION AS AGAINST EACH DEFENDANT)

106. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

107. That each of the Defendants had a duty to provide for the protection and safety of SHALYNNE while she was in their care, ensuring that safe and proper medical treatment and attention, medical treatment and medical care were provided to her at all times.

108. That defendants UHS and CENTENNIAL breached that duty by hiring employees and  personnel who were willing to deviate from reasonable and accepted standards and practices and fail to treat SHALYNNE in a reasonable and competent manner. In addition, the Defendants, and each of them, named above had a duty to reasonably supervise the care and treatment that was being provided to SHALYNNE in the CENTENNIAL emergency department and assure that the care and treatment being provided to SHALYNNE was reasonable and in compliance with proper medical

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

protocols and procedures and standards.  Defendants, and each of them, failed to follow proper medical protocols and procedures, including reasonable supervision of other medical personnel, which ultimately led to the injuries, death, and damages as hereinabove alleged, and thereby causing severe, permanent, debilitating injuries to, and ultimately the death of SHALYNNE and damages to Plaintiffs.

109. That such duty was breached by Defendants, and each of them, and their agents, employees, and/or the Defendants named above failed to follow proper medical protocols and procedures in providing medical care and treatment to SHALYNNE. All of which ultimately led to the injuries and damages as hereinabove alleged, thereby causing severe, permanent, and debilitation injuries and damages to SHALYNNE and ultimately causing her death.

110. That as direct and proximate result of these breaches, in protocol and procedure, as well as Defendants, and each of them, failures to properly monitor, train, and supervise their employees and/or agents, Plaintiffs have sustained damages in an amount to be determined by a jury at the trial of this matter.  As a result, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable.  Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

111. That as a further direct and proximate result of the Defendants and each of their

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

negligence, recklessness, intentional acts and/or conscious indifference and disregard for the safety and well-being of SHALYNNE, she was permanently and irreparably injured and was caused to suffer severe and extreme pain, suffering, and distress, as well as death. This has resulted in, and caused, the severe, debilitating, and permanent injuries and damages, in an amount to be determined by a jury at the time of the trial of this matter. As a result, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable. Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

112. For the reasons set forth herein, and as a proximate result thereof, Plaintiffs have been caused to incur expenses as and for attorney's fees and costs of suit herein. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and the costs of suit herein.

**SIXTH CAUSE OF ACTION**

**(RESPONDEAT SUPERIOR AGAINST AS AGAINST DEFENDANTS CENNTENIAL AND UHS)**

113. Plaintiffs reallage and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

114. That Defendants CENTENNIAL and UHS were and still are, to the extent known, the employer of all of the other Defendants named herein.

115. All the negligent and/or intentional actions alleged against the Defendants above

22

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

were performed within the scope of their employment and obligations as employees and/or agents of Defendants CENTENNIAL and UHS.

116. That Plaintiffs allege that the injuries and damages as alleged hereinabove, as caused to Plaintiffs were all caused, both directly and proximately, by the medical negligence, recklessness and/or intentional acts and omissions of each of the Defendants. Plaintiffs' general and special damages are in an amount to be determined at the time of trial by jury of this matter.  As a result, SHALYNNE and the Plaintiffs sustained and will continue to sustain damages, the exact amount of which is presently unknown and unascertainable.  Accordingly, Plaintiffs demand judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

117. For the reasons set forth herein, and as a proximate result thereof, Plaintiffs have been caused to incur expenses as and for attorney's fees and costs of suit herein. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and costs of suit herein.

## SEVENTH CAUSE OF ACTION

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON JOZETTE FIGUEREDO AS AGAINST ALL DEFENDANTS)

118. Plaintiffs reallage and incorporate the preceding paragraphs of this Complaint as if they were full set forth herein.

119. JOZETTE is the minor child of Plaintiff AMY VILELA and is the sister of SHALYNNE.

23

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

120.  JOZETTE was put in a position where she was unable to help her sister while she was dying of a DVT.

121.  JOZETTE's last memory of her sister SHALYNNE will be of June 27 and 28, 2015 when she spent the entire night holding her older sister as she lay dying in her hospital bed.

122.  The shock of these devastating events, and the subsequent dealings with the loss of her sister, has placed JOZETTE in a daily state of emotional distress since the date of SHALYNNE's death resulting in the requirement for JOZETTE to seek counseling for such distress.

123.  Defendants, and each of them, negligently inflicted emotional distress to the Plaintiff, JOZETTE.

124.  Wherefore, Plaintiff demands judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable by a jury at the time of trial of this matter.

125.  Plaintiffs have been required to retain The Law Firm of Casey D. Gish to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S. 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

**EIGHTH CAUSE OF ACTION**

**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ON AMY VILELA AS AGAINST ALL DEFENDANTS)**

126.  Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if

they were fully setforth herein.

127.  Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

128.  AMY was put in a position where she was unable to help her daughter while she was dying of a DVT.

129.  AMY's last memory of her daughter SHALYNNE will be of June 28, 2015 when she held her unconscious daughter as she struggled to breathe her final breaths in her hospital bed.

130.  The shock of these devastating events, and the subsequent dealings with the loss of her daughter, has placed AMY in a daily state of emotional distress since the date of SHALYNNE's death resulting in physical illness and the requirement for AMY to seek counseling.

131.  Wherefore, Plaintiff demands judgment against Defendants and each of them, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable by a jury at the time of the trial of this matter.

132.  Plaintiffs have been required to retain The Law Firm of Casey D. Gish to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S. 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of no less than twelve ("12") persons on all issues so triable pursuant to Fed.R.Civ.P. 38(b).

THE LAW OFFICE OF CASEY D. GISH
5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118
Phone (702) 583-5883

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1. For a judgment for the Plaintiffs for all money damages available in a sum to be determined;

2. For a finding by this Court that under the precedent set forth in *Abney v. University Medical Center of Southern Nevada* that this instant action is based, in part, on private federal cause of action, not in tort, the limitations on damages set forth in NRS 41.035 do not apply to Defendant. (see *Abney v. University Medical Center of Southern Nevada*, 2010 WL 1439106.)

3. For an award of attorney fees to the Plaintiffs for their reasonable attorney's fees, court costs and necessary disbursements incurred in connection with this lawsuit; and

4. For such other and further relief as the Court deems just and equitable.

Dated this  23rd  day of June, 2016.

LAW OFFICE OF CASEY D. GISH

By:  /s/ *Casey D. Gish*
_____

CASEY D. GISH, Esq.
Nevada Bar No. 6657
The Law Office of Casey D. Gish
5940 S. Rainbow Blvd.
Las Vegas, NV 89118
Phone: (702) 583-5883
Email: info@gishlawfirm.com
Attorney for Plaintiff

26